IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA REPUBLICAN PARTY, INC, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) CIVIL ACTION NO. ) 1:20-cv-5018-ELR |
| v. | ) ) ) |
| BRAD RAFFENSPERGER, *et al.*, | ) ) |
| Defendants. | ) |

## **DECLARATION OF CHRIS HARVEY**

Pursuant to 28 U.S.C. § 1746, I, Chris Harvey, make the following declaration:

1.

My name is Chris Harvey. I am over the age of 21 years, and I am under no legal disability that would prevent me from giving this declaration. If called to testify, I would testify under oath to these facts.

2.

I currently am the Director of Elections for the State of Georgia. I have held that position since July 2015. From August 2007 to July 2015, I was the Chief

Investigator and Deputy Inspector General for the Secretary of State's office, investigating, among other things, potential violations of state election law. For more than a decade, I have acquired firsthand knowledge of Georgia's election processes at both the state and county level.

3.

In Georgia, elections are administered at the county level, and the counties are responsible for receiving and processing absentee ballots. Thus, the counties are responsible for verifying the elector's information and signature on the outer envelope of the absentee ballot when it is received before processing and tabulating the ballot. The Secretary of State's office strengthened the signature verification process for the 2020 general election. County elections officials received training on signature matching from experts with the Georgia Bureau of Investigation. Additionally, voter signatures go through two layers of signature verification in the absentee ballot process. The voter's signature is first checked against the signatures on file with the county elections office when the voter submits an application for an absentee ballot. If the voter requests an absentee ballot through the Secretary's online absentee ballot request portal, the voter's identity is verified by matching the voter's name, date of birth, and Georgia driver's license or state identification card number contained in the state voter registration system pursuant to State Election

Board Emergency Rule 183-1-14-0.10-.16. The voter's signature is matched a second time when the absentee ballot is received by the county election office.

4.

In my capacity as Director of Elections, I occasionally send out Official Election Bulletins to county elections officials and county registrars, which provide updates on changes in state election laws and rules and guidance on election administration to assist county officials in their duties. The guidance is simply recommendations on best practices and does not supplant or replace Georgia law; county officials are still bound to follow the election code and the rules and regulations of the State Election Board.

5.

On May 1, 2020, my office distributed an OEB providing guidance on absentee ballot signature review. A true and correct copy of this guidance is attached as **Exhibit 1**. The purpose of the OEB was to remind county elections officials of the recent updates to Georgia law and regulations regarding verifying signatures on absentee ballots and provide guidance on the procedures that should be followed when a signature on an absentee ballot does not match. The OEB advised county officials on HB 316's reforms to absentee ballot procedures set forth in O.C.G.A. § 21-2-386, as well as State Election Board Rule 183-1-14-.13, which addressed how

quickly and by what methods electors need to be notified concerning absentee ballot issues. The OEB in no way is contrary to or inconsistent with the procedures in O.C.G.A. § 21-2-386(a)(1)(C). To the contrary, the OEB clearly states, **"If the signature does not appear to be valid, registrars and clerks are required to follow the procedure set forth in O.C.G.A. § 21-2-386(a)(1)(C)."**

6.

According to data sent to our office from Georgia counties as of December 16, 2020 (data from counties is continuing to come in, so these numbers may still be updated), 2,646 absentee ballots were rejected for missing or non-matching signatures out of the 1,322,529 absentee ballots cast in the November 2020 election, a rejection rate of 0.20%. Also according to data sent to our office by counties, another 2,577 absentee ballots were cured after having first been identified by counties as having a missing or non-matching signature. The absentee ballot cure process is set forth in O.C.G.A. § 21-2-386(a)(1)(C), and it was not in place prior to the 2020 election cycle. We found that the total number of absentee ballot rejections for signature issues increased approximately 350% in the November 2020 election in Georgia from the 2018 election, about the same rate of increase as the total number of absentee ballots accepted. The rejection rate for absentee ballots with missing or

non-matching signatures in the 2020 General Election was comparable to the absentee ballot rejection rate for signature issues in the 2018 General Election.

7.

Following the November general election, the Secretary of State's office received a number of questions asking whether the signature verification process on absentee ballot applications and envelopes is open to the public. We issued an OEB dated December 9, 2020, instructing counties that yes, the verification process is open to the public, based upon O.C.G.A. § 21-2-406, which requires elections officials to "perform their duties in public." A true and correct copy of this guidance is attached as **Exhibit 2**. The OEB also instructs that the fact that the signature verification process is public under Georgia law does not mean that public observers should be allowed to see confidential information or to interfere in the process. *See* O.C.G.A. § 21-2-597. The elections superintendent must ensure that any public viewing area or video feed offers meaningful access to view the process, but the superintendent should also put in place reasonable regulations to protect the voter's/applicant's personal identification information (PII) and/or non-public data from public view and to ensure that no observer interferes with the verification process.

8.

For the January 5, 2020 Senate run-off election, more than 1.2 million absentee ballots have been requested. Approximately 314,000 absentee ballots have already been returned by mail and accepted by county officials.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of December, 2020.

_____
CHRIS HARVEY

# EXHIBIT 1



# OFFICIAL ELECTION BULLETIN
May 1, 2020

_____

**TO:** County Election Officials and County Registrars

**FROM:** Chris Harvey, State Elections Director

**RE:** Absentee Ballot Signature Review Guidance

_____

Verifying that a voter's signature on his or her absentee ballot matches his or her signature on the absentee ballot application or in the voter registration record is required by Georgia law and is crucial to secure elections. Ensuring that signatures match is even more crucial in this time of increased absentee voting due to the COVID-19 crisis. The purpose of this OEB is to remind you of some recent updates to Georgia law and regulations regarding verifying signatures on absentee ballots and to make you aware of the procedures that should be followed when a signature on an absentee ballot does not match. HB 316, which passed in 2019, modified the absentee ballot laws and the design of the oath envelope. The State Election Board also adopted Rule 183-1-14.13 this year, which addresses how quickly and by what methods electors need to be notified concerning absentee ballot issues. What follows are the procedures that should be followed when the signature on the absentee ballot does not match the voter's signature on his or her application or voter registration record:

> **County registrars and absentee ballot clerks are required, upon receipt of each mail-in absentee ballot, to compare the signature or mark of the elector on the mail-in absentee ballot envelope with the signatures or marks in eNet and on the application for the mail-in absentee ballot. If the signature does not appear to be valid, registrars and clerks are required to follow the procedure set forth in O.C.G.A. § 21-2-386(a)(1)(C).**

**When reviewing an elector's signature on the mail-in absentee ballot envelope, the registrar or clerk must compare the signature on the mail-in absentee ballot envelope to each signature contained in such elector's voter registration record in eNet and the elector's signature on the application for the mail-in absentee ballot.[1] If the registrar or absentee ballot clerk determines that the voter's signature on the mail-in absentee ballot envelope does not match any of the voter's signatures on file in eNet or on the absentee ballot application, the registrar or absentee ballot clerk must seek review from two other registrars, deputy registrars, or absentee ballot clerks.**

**A mail-in absentee ballot shall not be rejected unless a majority of the registrars, deputy registrars, or absentee ballot clerks reviewing the signature agree that the signature does not match any of the voter's signatures on file in eNet or on the absentee ballot application. If a determination is made that the elector's signature on the mail-in absentee ballot envelope does not match any of the voter's signatures on file in eNet or on the absentee ballot application, the registrar or absentee ballot clerk shall write the names of the three elections officials who conducted the signature review across the face of the absentee ballot envelope, which shall be in addition to writing "Rejected" and the reason for the rejection as required under OCGA 21-2-386(a)(1)(C). Then, the registrar or absentee ballot clerk shall commence the notification procedure set forth in O.C.G.A. § 21-2-386(a)(1)(C) and State Election Board Rule 183-1-14-.13.**

---

[1] Once the registrar or clerk verifies a matching signature, they do not need to continue to review additional signatures for the same voter.

RULE 183-1-14-.13 Prompt Notification of Absentee Ballot Rejection

When a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure by mailing written notice, and attempt to notify the elector by telephone and email, if a telephone number or email is on the elector's voter registration record or absentee ballot application, no later than the close of business on the third business day after receiving the absentee ballot.  However, for any timely submitted absentee ballot that is rejected within eleven days of Election Day, the board of registrars or absentee ballot clerk shall send the elector notice of such rejection and opportunity to cure by mailing written notice, and attempt to notify the elector by telephone and email, if a telephone number or email is on the elector's voter registration record or absentee ballot application, no later than close of business on the next business day.

# EXHIBIT 2



# OFFICIAL ELECTION BULLETIN
December 9, 2020

_____

**TO:** County Election Officials and County Registrars

**FROM:** Chris Harvey, Elections Division Director

**RE:** Absentee Ballot and Absentee Ballot Application Signature Verification

_____

Signature Verification Process is Public

We have received numerous questions asking whether the signature verification process on absentee ballot applications and absentee ballot envelopes is open to the public. The short answer is yes, it is. Pursuant to O.C.G.A. § 21-2-406, "[s]uperintendents, poll officers, and other officials engaged in the conducting of primaries and elections held under this chapter shall perform their duties in public. Additionally, O.C.G.A. § 21-2-483(b), states that "[a]ll proceedings at the tabulating center and precincts shall be open to the view of the public, but no person except one employed and designated for the purpose by the superintendent or the superintendent's authorized deputy shall touch any ballot or ballot container."

The fact that the signature verification process is public under Georgia law does not mean that public observers should be allowed to see confidential information or to interfere in the process. *See* O.C.G.A. § 21-2-597. The elections superintendent must ensure that any public viewing area or video feed offers meaningful access to view the process, but the superintendent should also put in place reasonable regulations to protect the voter's/applicant's personal identification information (PII) and/or non-public data from public view and to ensure that no observer interferes with the verification process. A good template may be the processes you have put in place for the early processing of absentee ballots, which is also publicly viewable but has protections in place to protect confidential information and prevent interference with official duties.

Any interference or attempted interference with official election duties should be reported to the Secretary of State's office for investigation and, if necessary, local law enforcement.

<u>Signature Verification Process for Absentee Ballots and Absentee Ballot Applications</u>

O.C.G.A. § 21-2-386(a)(1)(B) requires "[u]pon receipt of each ballot, the registrar or absentee ballot clerk to compare the signature or mark with the signature or mark on the absentee elector's voter registration card or the most recent update to such absentee elector's voter registration card AND application for absentee ballot or a facsimile of said signature or mark taken from said card or application." It further provides, "if the information and signature appear to be valid and other identifying information appears to be correct, [the registrar or absentee ballot clerk shall] so certify by signing or initialing his or her name below the voter's oath." O.C.G.A. § 21-2-386(a)(1)(B).

O.C.G.A. § 21-2-381(b)(1) requires "[u]pon receipt of a timely application for absentee ballot, a registrar shall enter thereon the date received. The registrar or absentee ballot clerk shall determine, in accordance with the provisions of this chapter, if the applicant is eligible to vote in the primary or election involved. In order to be found eligible to vote an absentee ballot by mail, the registrar or absentee ballot clerk shall compare the identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compare the signature or mark of the elector on the application with the signature." "If found eligible, the registrar or absentee ballot clerk shall certify by signing in the proper place on the application." O.C.G.A. § 21-2-381(b)(2)

As set forth in Georgia law a thorough process for signature verification is required at both the absentee ballot application and absentee ballot stage. As you are all aware, numerous allegations have been raised about the signature match process following the November election. While we have not seen any evidence to the contrary, please be sure that your office is following the thorough signature verification requirements set out in Georgia law. If you have any question as to the validity of a signature on either an absentee ballot or absentee ballot application after following your signature verification process, you should utilize the cure procedures set forth in O.C.G.A. § 21-2-386(a)(1)(C), O.C.G.A. § 21-2-381(b)(3), and SEB Rule 183-1-14-.13.

Your policies and procedure regarding signature match must follow Georgia law, and they should also be accomplished in a manner that helps provide confidence in the process to the voting public.